Brown Coal Company *v.* Wright.

Opinion delivered June 30, 1919.

Sales—car of coal—failure to notify buyer—liability for demurrage.—A. ordered coal from B. to be shipped by rail to A. The coal was shipped, but B. did not notify A. of that fact, nor did the railroad notify A. of its arrival until after a large amount for demurrage had accrued. A. notified B. of the facts and declined to take the coal; B. wired A. to pay the demurrage and unload the coal quickly. This A. did. *Held*, B. was entitled to recover from A. the purchase price agreed on, less the amount of demurrage paid out by A.

Appeal from Arkansas Circuit Court, Southern District; *Thomas C. Trimble,* Judge; affirmed.

The appellee, Mrs. F. A. Wright, through her agent ordered three cars of coal from the appellant. It is a written order dated April 3, 1918, directed to the Brown Coal Company, Memphis, Tennessee, instructing them to ship to Mrs. F. A. Wright at Thomwall, Arkansas, three cars of coal. The first car was to be shipped April 20, the others as ordered. The order was signed by Mrs. Wright's agent and was accepted by the appellant by letter of date April 11, 1918. On the 14th of April the appellant shipped the car of coal, the price of which was to be $299.39, to Mrs. Wright consigned to her at Thomwall in due time to reach her on the 20th of April, 1918. The car was shipped over the L. & N. Ry. Co.

May 13, 1918, the appellee telegraphed the appellant as follows: "Car No. 34082 shipped me at Thomwall, Arkansas, your letter dated April 14th; Memphis postmark May 4th. No notice from railroad company; demurrage $160. What shall I do? Wire instructions without delay, care R. D. Rasco, DeWitt, Arkansas. Mrs. F A. Wright."

To the above the appellant replied by telegram dated May 14, 1918, as follows:

"Suggest you unload car of coal promptly and release car now at DeWitt; see your agent. Signed, Brown Coal Company."

The same day the appellee wrote the appellant as follows:

"You will find enclosed my personal check for the sum of $299.39 less $175.10 demurrage. Your notice did not reach me until the 7th day of May, although our statement was made out April 14; the postmark in Memphis was May 4. You will, therefore, find enclosed check for $124.29 in payment of account."

On May 23, 1918, the appellant wrote the appellee returning the check for $124.29 and gave as its reasons for doing so that the appellee had deducted demurrage that had accrued on the car while standing at Thomwall await-

ing disposition. The appellant insisted in the letter for the payment of the purchase price of the car, which the appellee refused, and the appellant instituted this action to recover the full purchase price of the car of coal.

The appellee testified that the first information she received from the appellant that the coal was shipped was in a letter postmarked May 4, at Memphis. She exhibited the envelope and identified the envelope showing the above postmark. She testified that her agent, in order to ascertain whether the coal had been shipped, and if so where, watched the station and the switch every day, and that she watched the mail box every day, she received no notice from the railroad company that the car had arrived; the first notice she had that the coal had been shipped and when it arrived at DeWitt was from the agent at Stuttgart; she never received any notice or bill of lading from the company and did not know anything about what number of car to look for; she refused to unload the car after she learned it had arrived at Thomwall because the demurrage had accrued without any notice to her from the Brown Coal Company or the railroad company. She had a receipt from the railroad company for the amount of the demurrage.

R. D. Rasco testified that the appellee advised with him as an attorney as to what would be the best to do about the demurrage which had accumulated on the car to amount of $175.10; that the appellee said the coal was not worth the amount she paid for it and the demurrage, and did not desire to pay it; that he advised her that it would be best to take the matter up with the Brown Coal Company and not to unload it until she heard from it. He further testified that the appellee sent the telegram notifying the appellant of the demurrage and asked it to wire instructions; that the appellant called witness over the telephone, and after he stated to them that the appellee had absolutely refused to unload the coal he was directed by appellant, as Mrs. Wright's attorney, to have the car load of coal, that at that time and for some time past had been at the station at DeWitt, unloaded and to

pay the demurrage. It was the distinct understanding, said the witness, "that the demurrage was to be paid by the Brown Coal Company. I told them in my conversation that she would not receive it if she was required to pay the demurrage."

Witness exhibited with his deposition a letter from the appellant to the appellee dated August 14, 1918, confirming the telegram to Mrs. Wright and also long distance conversation with Mr. Rasco. In this letter, signed by appellant's sales manager, it is stated: "I suggested to him that he unload the car of coal promptly and release the car, so that it would not accrue any more demurrage, and that the car was now at DeWitt, and that after he had paid the agent at DeWitt that they shall haul the car back to Thomwall. I find that we have mailed you a post card as well as invoice, and none of this mail has been returned to us."

The court sitting as a jury rendered a judgment in favor of the appellant for sum of $102.65, which represents the amount of appellant's claim less the sum of $196.74, the amount of the demurrage paid by the appellee, and adjudged the costs against the plaintiff.

The appellant duly prosecutes this appeal.

*J. E. Ray,* for appellant.

1. The delivery of the car of coal to the railway company was a delivery to the consignee, even if she never received it at all, and the contract so reads, and that is the law. The car was properly consigned to appellee. 43 Ark. 358; 44 *Id.* 559; 50 *Id.* 20; 78 *Id.* 123; 79 *Id.* 456; 91 *Id.* 318; 92 *Id.* 287; 98 *Id.* 495; *Ib.* 482.

2. The court erred in refusing to reduce its findings of fact and law to writing, as asked and required by Kirby & Castle's Digest, section 7652.

*R. D. Rasco,* for appellee.

1. The liability of appellant for demurrage charges does not depend altogether upon the question as to when the title to the coal passed. It was the duty of appellant to notify appellee when the car was shipped. The con-

tract does not in express language require notice of the time of shipment, but both parties understood that notice should be given, as shown by their conduct, in executing its terms. Notice was proper and necessary. 115 Ark. 166; 114 *Id.* 415; 46 *Id.* 129. This is no violation of the parol evidence rule. 94 Ark. 575; 125 *Id.* 492; Jones on Evidence, § 440; 66 Minn. 156; 6 N. W. 854; 93 Ark. 439.

2. The testimony shows that appellant agreed to pay the demurrage charges. Finding of facts by the trial judge sitting as a jury are conclusive if based on evidence. 68 Ark. 83; 66 *Id.* 53; 80 *Id.* 249; 96 *Id.* 606; 126 *Id.* 318; 114 *Id.* 170; 171 S. W. 924. There is some evidence here to support the findings of the court. 111 Ark. 190; 107 *Id.* 281.

3. The refusal of the court to reduce its findings to writing was harmless, as it was not carried into the motion for new trial. Since appellant recovered all that it was entitled to receive, appellant cannot complain of harmless errors. 85 Ark. 115; 111 *Id.* 272; 112 *Id.* 507; 112 *Id.* 269. This court only reverses for prejudicial errors. 120 *Id.* 236; 128 *Id.* 594. Nor for mere irregularities where the judgment is right on the whole case. 24 *Id.* 586. The cases in 43 Ark. 358 and 44 *Id.* 559, cited by appellant, are the law as to when the title passes. 98 *Id.* 482. But that is not the question here, as appellant failed to give notice and enable appellee to keep down demurrage charges. The notice if sent by mail was not in time. Moore on Carriers, 399; 2 Daly (N. Y.) 104. Carriers must give notice. Kirby & Castle's Digest, § § 8177, 8184. If goods are shipped, but because of some failure of the seller to comply with the terms of the contract or offer or duties imposed by law the property does not pass. Williston on Sales, 402. The mail was the agent of the consignor. 36 N. Y. 307; 29 Vt. 127; 15 R. I. 66. If the offer is by mail and the acceptance by telegraph the offerer must receive the notice of acceptance before a binding contract is made. 130 Mass. 173. See also Page on Contracts, 52.

ARK.]   BROWN COAL CO. v. WRIGHT.   541

WOOD, J., (after stating the facts). Under the contract, evidenced by the order and accepted by the appellant, the delivery of the car by the appellant to the railroad company at Memphis was a delivery to the consignee. The title to the coal under the contract passed to the consignee, the appellee. The appellant had the right under the contract to demand of appellee payment for the car of coal, and if not paid on the 10th day of the month succeeding shipment, the right to draw on the appellee for the amount, and appellee became liable to the appellant for the purchase money.

But that is not the question involved here, for the appellee admits that she is liable to the appellant for the purchase price of the coal, but she claims that through the fault of the appellant in not giving her notice of the time when the car was shipped a demurrage amounting to $196.74 accrued which she paid under the directions of appellants, and which she would not have paid but for such instructions.

The testimony tended to prove that it was contemplated at the time the contract was entered into that the appellant should notify the appellee of the time when the car was shipped. The testimony tended to prove that the appellee received no such notice; that she was present through her agent at Thomwall looking for the car and ready to receive the same when it should arrive; that she received no notice from the railroad company at the time of its arrival at Thomwall until the demurrage in controversy had accrued; that she received no notice from the appellant by letter or otherwise that the shipment had been made and that after she ascertained that the car had finally arrived at Thomwall and demand for the amount of demurrage was made upon her she immediately communicated with the appellant by wire asking for instructions and received the answer set forth in the statement suggesting that she unload the car of coal promptly and release the car.

The testimony further tended to prove that the appellant was informed by appellee's agent and attorney,

after the demurrage had accrued and before she paid the same, that she would not accept and unload the car and pay the demurrage, and "that it was the distinct understanding between the appellant and the appellee, acting through her attorney, that the appellant should pay this demurrage; that, after this agreement was arrived at between the appellant and the appellee, the appellee paid the railroad company the demurrage and took the railroad company's receipt therefor, whereupon the car was released and accepted by the appellee.

The testimony thus adduced was amply sufficient to sustain the finding of the court that the appellant was liable to the appellee for the amount of the demurrage charges under its express agreement to pay the same, and the court did not err in so holding.

There is no error in the judgment, and it is therefore affirmed.